437 S.E.2d 284

**James E. ADKINS, Plaintiff Below, Appellee,**

**v.**

**Samantha Jane SPERRY; Agency Rent–A–Car, Inc.; James E. Adkins, Sr.; and Erie Insurance Company, a Corporation, Defendants Below**

**Erie Insurance Company, a Corporation, Defendant Below, Appellant.**

**No. 21660.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Nov. 1, 1993.

---

John H. Bicknell, Greene, Ketchum, Bailey & Tweel, Huntington, for appellee.

L. David Duffield, Scott W. Andrews, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, for appellant.

**PER CURIAM:**

This action is before this Court upon an appeal from the October 16, 1992, order of the Circuit Court of Cabell County, West Virginia. The circuit court granted the appellee's, James E. Adkins, Jr., motion for summary judgment holding that West Virginia law controlled the insurance contract with respect to the facts in this case. On appeal, the appellant, Erie Insurance Company, asks that this Court reverse the ruling of the circuit court, and thus, hold that Ohio law should be the applicable law controlling the insurance contract herein. This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the judgment of the circuit court is reversed.

I

The Adkins family, James E. Adkins, Sr., Thelma J. Adkins and the appellee are residents of Proctorville, Ohio, which is situated close to the Ohio/West Virginia border. Mr. Adkins worked in West Virginia, and thus, he was in and out of West Virginia on a daily basis. On February 11, 1986, Mrs. Adkins purchased an automobile insurance policy from the appellant, via the appellant's agent in Huntington, West Virginia. Although the actual purchase of the insurance policy took place in West Virginia, the application for the policy was one regarding Ohio.

The policy covered Mr. and Mrs. Adkins, the appellee, and the policy insured three vehicles owned by the Adkins. All three of these vehicles were licensed in the state of Ohio. In addition, the risk insured under the Ohio policy was based upon the state of Ohio's premium rates, and more specifically, "territory 59," the territory for the county in which Proctorville, Ohio is located.

On December 23, 1990, Mr. and Mrs. Adkins and the appellee were involved in an automobile accident in Huntington, West Virginia. The appellee and his mother, Mrs. Adkins, were passengers in the vehicle owned and driven by the appellee's father,

Mr. Adkins. The other car involved in the accident was driven by defendant below, Samantha Jane Sperry, and owned by Agency Rent–A–Car, Inc. The appellee was severely injured.

Upon recognizing the severity of the appellee's injuries, the insurers for the drivers of the vehicles paid their full liability policy limits to the appellee. Specifically, the appellant paid $100,000 in liability coverage, plus, $25,000 in medical payments; American National Insurance Company, insurer for Ms. Sperry, the driver of the Agency–Rent–A–Car vehicle, paid $100,000 in liability coverage; and, Agency–Rent–A–Car, as a certified self-insurer under West Virginia law, paid $20,000. As a result, the appellee has received $245,000.00 in liability coverage.

Since the accident, the appellee has attempted to collect underinsured motorist coverage from the appellant pursuant to James E. Adkins, Sr.'s underinsured insurance motorist coverage, which is $50,000 per person and $100,000 per occurrence. Because there was no multi-car discount set forth in the policy, the appellee attempted to stack the three underinsured motorist coverages on the three vehicles as provided under West Virginia law.[1] The appellant took the position that Ohio law controlled, and thus, precluded the appellee from recovering underinsured motorist coverage.[2]

The appellee instituted this action in order to recover damages for his injuries as well as underinsured motorist coverage from the appellant. The appellant made a motion for summary judgment on the grounds that Ohio law was applicable in construing the insurance contract in question. The appellee also moved for summary judgment asserting that the insurance contract should be construed under West Virginia law. On October 16, 1992, the circuit court denied the appellant's motion, and thus, granted the appellee's motion for summary judgment holding that West Virginia law would control the insurance contract, because West Virginia has a more significant relationship to this litigation and to the parties. As a result of the circuit court's ruling, the appellee would be entitled to underinsured motorist coverage, and moreover, the appellee would be allowed to stack the policy limits of such coverage, for a total of $150,000, as per West Virginia law.

It is from the circuit court's order of October 16, 1992, that the appellant appeals to this Court.

---

1. *See State Auto Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990); *W.Va.Code*, 33–6–31 [1988].

2. An underinsured motor vehicle in Ohio, as argued by the appellant is as follows:

Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident[.]

*Hill v. Allstate Ins. Co.*, 50 Ohio St.3d 243, 553 N.E.2d 658, 660 (1990), citing Ohio R.C. § 3937.18(A)(2). "Simply put, the underinsured motorist statute requires an insurer to provide coverage to its insured when the tortfeasor's coverage is *less* than the limits of the insured's uninsured motorist coverage at the time of the accident." *Id.* Here, because the tortfeasor had paid the liability policy limits of $100,000 and the appellee only had $50,000 in underinsured motorist coverage, the appellant asserts Ms. Sperry's vehicle would not be considered an underinsured vehicle under Ohio law. Accordingly, the appellant concludes that under Ohio law the appellant, as an underinsured carrier, would not be liable in this instance.

Since the filing of this appeal and the oral arguments of respective counsel before this Court, counsel for the parties brought to our attention a recent decision handed down by the Supreme Court of Ohio, *Savoie v. Grange Mut. Ins. Co.*, 67 Ohio St.3d 500, 620 N.E.2d 809, (1993), which overrules *Hill, supra.* In the syllabus of *Hill*, the Supreme Court of Ohio ultimately held that, "[u]nless otherwise provided by an insurer, underinsured motorist liability insurance coverage is not available to an insured where the limits of liability contained in the insured's policy are identical to the limits of liability set forth in the tortfeasor's liability insurance coverage." However, in syllabus point 3 of *Savoie*, the Supreme Court of Ohio overruled *Hill* by holding that, "[a]n underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers." Whether *Savoie* or *Hill* applies is not at issue before us in this case.

## II

The issue presented before us raises a question pertaining to the conflict of laws principles applicable to contracts.

The appellant raises four assignments of error on appeal: (1) the circuit court erred in refusing to recognize that the parties to the insurance contract chose Ohio law as the governing law of the insurance contract; (2) the circuit court erred in finding that West Virginia has a more significant relationship to the case than does Ohio; (3) the circuit court erred when it essentially refused to follow *Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345 (1988), notwithstanding the recent reaffirmation of that case by this Court in *Nadler v. Liberty Mut. Fire Ins. Co.,* 188 W.Va. 329, 424 S.E.2d 256 (1992), regarding the appropriate conflict of laws principles applicable to coverage issues in insurance contracts; and, (4) the circuit court erred in granting the appellee's motion for summary judgment, and thus denying the appellant's motion for summary judgment, because there are *no facts in the record which would permit* West Virginia law to control the contract.

The underlying and specific issue within these assignments of error, and that which will be addressed by this Court, is the question as to whether Ohio law or West Virginia law should be the controlling law with respect to this contract for motor vehicle insurance.

■ This Court analyzed and discussed the conflict of laws rule applicable to coverage issues in motor vehicle insurance contracts in *Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345 (1988), and most recently in *Nadler v. Liberty Mut. Fire Ins. Co.,* 188 W.Va. 329, 424 S.E.2d 256 (1992). In *Lee,* we began our analysis by recognizing that cases dealing with uninsured motorist coverage involve an aspect of policy coverage, rather than liability, and therefore, these cases are treated, for the purpose of conflicts analysis, as a contract question. Questions of coverage, as we noted in *Lee,* include issues such as the enforceability of exclusions in the policy, the availability of stacking and the applicable limits of coverage, all which are deemed con-

tract questions. Thus, in syllabus point 1 of *Lee,* we held: "Where in a suit for the recovery of uninsured motorist insurance benefits an issue arises which involves insurance coverage, that issue is to be resolved under conflict of laws principles applicable to contracts."

■ In *Nadler,* we recited the general conflict of laws approach in construing contracts as found in syllabus point 2 of *General Electric Co. v. Keyser,* 166 W.Va. 456, 275 S.E.2d 289 (1981):

'The law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state.' Syl. pt. 1 (in part) *Michigan National Bank v. Mattingly,* [158 W.Va. 621,] 212 S.E.2d 754 (1975).

However, in syllabus point 2 of *Nadler,* we acknowledged this Court's adoption of the modified version of this rule, as set forth in *Lee:*

'The provisions of a motor vehicle policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties.' *Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345 (1988).

*See also* syllabus point 1 of *Joy Technologies v. Liberty Mut. Ins.,* 187 W.Va. 742, 421 S.E.2d 493 (1992):

'In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.' Syllabus, *Liberty Mutual Insurance Company v. Triangle Industries, Inc.,* 182 W.Va. 580, 390 S.E.2d 562 (1990).

Our adoption of this rule, as we explained in *Lee* and *Nadler,* was derived from the Restatement (Second) of Conflict of Laws,[3]

---

**3.** Footnote 16 of *Lee,* quoted § 193 of the Re-

statement (Second) of Conflict of Laws which

and motivated, in part, by the fact that it takes into account the reasonable expectations of the parties to the insurance contract. Further, in n. 8 of *Nadler,* we recognized that the parties to the contract may defeat the traditional conflict of laws principle applicable by making a choice of law in the contract. *See also Joy v. Chessie Employees Fed. Credit Union,* 186 W.Va. 118, 411 S.E.2d 261 (1991); *Lee, supra.*

The parties herein have admitted that the issue raised, the availability of underinsured motorist coverage and the possibility of stacking such coverage, are questions of coverage warranting the application of contract principles of conflict of laws.

The appellant contends that there are no facts in the record which would permit West Virginia law to control the insurance contract, because the evidence clearly indicates that the parties chose Ohio law as the controlling law, and furthermore, Ohio has a more significant relationship to the parties than does West Virginia.

The appellant relies, in part, upon the affidavit of Julian Neal, of Neal & Company, Inc., the agent for the appellant where the Adkins applied for the insurance, who attested to the fact that the Adkins applied for automobile insurance for their automobiles that were to be insured and located within the state of Ohio, according to the laws of Ohio. Moreover, the appellant argues that the application for the insurance was delineated as an Ohio application, the Adkins family are all residents of Ohio, with all of their vehicles registered in Ohio.

To the contrary, the appellee contends that the facts in this case compel this Court to construe the motor vehicle policy provisions herein according to the laws of West Virginia. Specifically, the appellee argues that the evidence satisfies this Court's guideline regarding the interpretation of motor vehicle policy provisions, per *Nadler,* as the policy provides:

> 'The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk dur-

was issued in West Virginia for a risk principally located in West Virginia.

In support of his argument, the appellee asserts, as attested to by Mrs. Adkins in her affidavit, the policy was issued and purchased in West Virginia. The appellee further asserts that at this time of issuance and purchase, the appellant was made aware of the fact that the risk insured, Mr. Adkins' car, would be driven in West Virginia on a daily basis, so West Virginia is the principal location of the vehicle. The appellant concludes by arguing since the policy was issued in West Virginia and the risk insured was principally located in West Virginia, West Virginia has a more significant relationship to the transaction and the parties.

We, however, disagree with the appellee's analysis. This Court's guideline, as reiterated in *Nadler,* makes reference to the state where the policy was issued and the state where the risk insured was principally located. Ordinarily, then if the policy is issued in the same state where the vehicle is principally located, then that state's law will apply unless another state has a more significant relationship to the transaction or the parties.

■ Thus, we are of the opinion that following the implementation of the conflict of laws significant relationship test, per the guideline in *Nadler,* to the facts herein, this Court is compelled to apply the law of Ohio to the insurance contract. West Virginia does not have a more significant relationship to the parties or the transaction than that of Ohio. The facts supporting this conclusion are as follows: the Adkins are residents of Ohio, the application for the insurance policy was delineated as an Ohio application, the actual policy was an Ohio insurance policy and the risk insured was registered and licensed in Ohio. Whether or not Mr. Adkins drove the car in West Virginia is not the controlling issue.

> ing the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.'

These facts lead us to conclude that the parties reasonably expected the law of Ohio to control the interpretation of the insurance policy. Therefore, based upon the evidence before us, and pursuant to the principles enunciated by this Court in *Lee v. Saliga* and *Nadler v. Liberty Mut. Fire Ins. Co.*, we find Ohio law should control the insurance contract in question.

Accordingly, the judgment of the Circuit Court of Cabell County is reversed.

Reversed.